IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATASHA CAMPBELL | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | C.A. No. 4:09-cv-861 |
| | § | |
| I.C. SYSTEM, INC. | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE:

COME NOW, NATASHA CAMPBELL ("Ms. Campbell" or the "Plaintiff"), Plaintiff in the above styled case and for cause of action against I.C. SYSTEM, INC. ("ICS" or the "Defendant") and would show this Court as follows:

### I. Parties

1. The Plaintiff is an individual residing in the State of Texas.

2. Defendant I.C. System, Inc. is a Minnesota corporation and may be served by serving its registered agent, C.T. Corporation System, at its registered address located at 350 N. St. Paul Street, Dallas, Texas 75201.

### II. Jurisdiction and Venue

3. This Court has jurisdiction under 28 U.S.C. §1331 in that this civil action arises under the law of the United States, in particular under 15 U.S.C. §1692, et al.

1

4. Defendant is also liable to the Plaintiff pursuant to the laws of the State of Texas, which claims may be brought under the supplemental and ancillary jurisdiction of this Court, 28 U.S.C. § 1367(a).

5. This Court has venue under 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in Houston, Texas, which is a part of the Southern District of Texas, Houston Division.

6. This Court has personal jurisdiction over the Defendant, because the Defendant has established minimum contacts in the State of Texas.  The Defendant engaged in collection actions in the State of Texas including both telephone calls to Texas residents to collect debts and sending collection letters to Texas residents to collect debts.  There is both general and specific jurisdiction over the Defendant.

### III.  Background Facts

7. Ms. Campbell had a Target credit card account in the approximate amount of $200.00.  Ms. Campbell became pregnant and in the last months of the pregnancy developed complications which required her to stop working.  This, of course, placed undue financial hardships on her family.  She was unable to pay her Target account.  Just days before Hurricane Ike slammed into the Gulf Coast in mid-September of 2008, paralyzing the City of Houston, Ms. Campbell gave birth to a baby girl prematurely.  The baby was placed in intensive care on a breather and was required to stay in the hospital through January 2009.

8. On or about December 10, 2008, Ms. Campbell received a telephone call from one of the Defendant's representatives while she was on her way to the hospital for her daughter's MRI. The Defendant's representative made a demand for payment of the account. Ms. Campbell told the representative about her daughter's condition and how it had caused her the financial hardships that led to her inability to pay Target. Ms. Campbell told the representative that she was on her way to her daughter's MRI, but despite this she received multiple telephone calls that day from the Defendant's representatives. In the evening Ms. Campbell returned the calls of the Defendant and spoke with a representative. She told the representative that she had received multiple previous calls that day and asked that ICS stop calling her about the account repeatedly. In response, ICS' representative told Ms. Campbell "we can call you as many times as we want." A woman named Michelle who purported to be the representative's supervisor then got on the telephone and began speaking to Ms. Campbell in a rude and unprofessional manner. She accused Ms. Campbell of "harassment to Target" by failing to pay the bill. When Ms. Campbell tried to explain that her troubled pregnancy and premature delivery had caused financial problems, the Manager stated "so you have a baby and can't pay your bills? Come on Ma'am!"

9. Ms. Campbell's husband who was riding in the passenger seat and could tell that his wife was being upset by the caller, begin speaking in the background.

The Defendant's representative told Ms. Campbell "If your husband has so much to say, why don't you put him on the phone! You put him on!" This purported manager also asked Ms. Campbell in a sarcastic and abusive tone "Well if your child is in the hospital, why aren't you there?" Throughout the conversation, the representative referred to Ms. Campbell as "you people." Ms. Campbell asked the manager for the name and phone number of the Compliance Officer of the company. The manager stated "I will never give you the Compliance Office, and if you get it, they will just ask you to pay your bill."

10. On December 16, 2008, Ms. Campbell called the Defendant's offices and attempted to stop the calls. She believed after her telephone discussion that the calls would stop.

11. On December 22, 2008, Ms. Campbell received another collection call from the Defendant and a message on her voicemail. On December 23, 2008, the Defendant telephoned and spoke with Ms. Campbell multiple times throughout the afternoon and evening.

12. On January 5, 2009, the Defendant called Ms. Campbell again. That afternoon Ms. Campbell returned the Defendant's call and in the telephone discussion informed the representative that she could not pay the account at that time. The representative immediately hung up on Ms. Campbell. Later that evening an ICS representative named "Bobby" called Ms. Campbell. Ms.

4

Campbell again stated that she was not in a position to pay the account. The Defendant's representative told Ms. Campbell "what would you do if someone took your money and did not pay you back? – who would you call?" This representative made other comments such as "you better pay or else" and "I am not an attorney and I can't give you legal advice, but if you can't pay you better get an attorney." Ms. Campbell ended the call. This was not the end of the evening for Ms. Campbell. At 8:30 p.m., the Defendant called Ms. Campbell again and the representative told Ms. Campbell that she only had a few weeks left to pay before the account would "go to the next step."

## **IV.  Causes of Action**

### A.  Violations of the FDCPA

13. The Plaintiff is a consumer as defined by 15 U.S.C. § 1692a(3). The Defendant is a debt collector as defined by 15 U.S.C. § 1692a(6).

14. The Defendant harassed, oppressed or abused the Plaintiff in violation of 15 U.S.C. § 1692d(2) and (5) by using language intended to abuse unreasonably Ms. Campbell and by causing Ms. Campbell's telephone to ring repeatedly or continuously or making repeated or continuous telephone calls with the intent to harass Ms. Campbell.

15. The Defendant used false, deceptive, or misleading representations or means in connection with the collection of a debt: (1) in violation of 15 U.S.C. §

5

1692e(4) by implying that nonpayment of the debt would result in her arrest or imprisonment or the seizure, garnishment, attachment, or sale of her property or wages where such action was not lawful and the Defendant did not intend to take such action, (2) in violation of 15 U.S.C. § 1692e(5) by threatening to take action that could not legally be taken or that was not intended to be taken, namely by making the implied threat that failure to pay the debt would lead to criminal charges being filed take legal action her arrest or imprisonment or the seizure, garnishment, attachment, or sale of her property or wages, (3) in violation of 15 U.S.C. § 1692e(7) by making the false representation or implication that the Plaintiff committed a crime or other conduct in order to disgrace her.

16. As a direct and proximate result of the acts of the Defendant, the Plaintiff has suffered actual damages, which she now seeks.

17. As a result of the Defendant's violations, the Plaintiff is entitled to an award of statutory damages pursuant to 15 U.S.C. §1692k(a) for which she now sues.

18. The Plaintiff would further show this Court that recovery of the costs of this action, including reasonable attorney's fees, are authorized, made, and provided under and according to the provisions of 15 U.S.C. §1692k(a)(3), and the Plaintiff seeks them in this action.

### B. Violations of the Texas Collection Practices Act

19. The Plaintiff incorporates herein the allegations contained in paragraphs 7 through 12 above.

20. Additionally and alternatively, the Defendant's actions constituted violations of the Texas Collection Practices Act.

21. The Plaintiff is a consumer as that term is defined by Tex. Fin. Code, § 392.001(1). The Defendant is a debt collector as that term is defined by Tex. Fin. Code, § 392.001(6).

22. The Defendant's violations of the Texas Collection Practices Act include the following:

   a. Accusing falsely or threatening to accuse falsely Ms. Campbell of fraud or any other crime, in violation of Tex. Fin. Code, § 392.301(a)(2).
   b. Threatening that Ms. Campbell would be arrested for nonpayment of the consumer debt without proper Court proceedings, in violation of Tex. Fin. Code, § 392.301(a)(5).
   c. Threatening to file a charge, complaint or criminal action against Ms. Campbell when she had not violated a criminal law, in violation of Tex. Fin. Code, § 392.301(a)(6).
   d. Representing that nonpayment of the debt would result in seizure, repossession or sale of the Plaintiffs' property without proper court proceedings, in violation of Tex. Fin. Code, § 392.301(7).
   e. Threatening to take an action prohibited by law, in violation of Tex. Fin. Code, §392.301(a)(8).
   f. Using language intended to abuse unreasonably Ms. Campbell and by causing Ms. Campbell's telephone to ring repeatedly or continuously or making repeated or continuous telephone calls with the intent to harass Ms. Campbell, in violation of Tex. Fin. Code, §392.302(1) and (4).
   g. Misrepresenting the legal status of the alleged debt in violation of Tex. Fin. Code, § 392.304(a)(8).

    h.  Using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer in violation of Tex. Fin. Code § 392.304(a)(19).

23. As a direct and proximate result of the acts of the Defendant, the Plaintiff has suffered actual damages, which she now seeks.

24. In addition, the Plaintiff would further show this Court that recovery of reasonable attorney's fees are authorized, made, and provided under and according to the provisions of Tex. Fin. Code, § 392.403(b), and the Plaintiff seeks them in this action.

### C.  Texas Deceptive Trade Practices Act

25. The Plaintiff incorporates herein the allegations contained in paragraphs 7 through 12 above.

26. Additionally and alternatively, Defendant's actions, by violating the Texas Finance Code at § 392.001 *et seq.*, constitute violations of the Texas Deceptive Trade Practices Act, including but not limited to Subchapter E, Chapter 17 of the Tex. Bus. & Comm. Code pursuant to Tex. Fin. Code § 392.404.

27. As a direct and proximate result of the acts of the Defendant, the Plaintiff has suffered damages, including, without limitation, economic and mental anguish damages.

28. The unlawful acts and practices described above were committed knowingly and/or intentionally by the Defendant. Therefore, pursuant to the DTPA Section 17.50, the Plaintiff is entitled to an award of exemplary damages.

29. The Plaintiff has been forced to hire the attorneys whose names appear below to pursue those claims on its behalf. The Plaintiff also seeks to recover her reasonable and necessary attorneys' fees pursuant to the Texas Deceptive Trade Practices Act.

## V.

## **Jury Demand**

30. The Plaintiff demands a trial by jury on all issues.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, NATASHA CAMPBELL, prays that Defendant, I.C. CREDIT SYSTEM, INC., be cited to appear and answer, and that upon final trial of this matter that judgment be entered against the Defendant as follows:

1. Actual damages.
2. Exemplary, punitive and additional damages.
3. Statutory damages under 15 U.S.C. § 1692k not to exceed $1,000.00.
4. Costs of the action, including but not limited to reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k and pursuant to Tex. Fin. Code, § 392.403.
5. Prejudgment and post-judgment interest as allowed by law.
6. Such other and further relief that may be just and proper.

Respectfully submitted,

**WAUSON ♦ PROBUS**

By: ___/s/  Matthew B. Probus___
    **Matthew B. Probus**
    State Bar No. 16341200
    Fed. I.D. No. 10915

Comerica Bank Building
One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303
(281) 242-0306 (Facsimile)

*ATTORNEYS FOR PLAINTIFF,
NATASHA CAMPBELL*